THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DANIEL D. ELLIS, Defendant-Appellant.

Fourth District   No. 4—84—0649

Opinion filed April 24, 1985.

Daniel D. Yuhas and Diana N. Cherry, both of State Appellate Defender's Office, of Springfield, for appellant.

Thomas K. Leeper, State's Attorney, of Quincy (Robert J. Biderman and Linda Welge, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

PRESIDING JUSTICE GREEN delivered the opinion of the court:

On July 14, 1984, following a jury trial in the circuit court of Adams County, defendant, Daniel Ellis, was convicted of murder and was subsequently sentenced to 40 years' imprisonment. On appeal, defendant contends that (1) the trial court erred in denying his motion to suppress his pretrial statements to the police; and (2) he was denied a fair trial by (a) the exclusion of his offer of testimony concerning the homosexuality of the victim, and (b) the subsequent statement by the prosecutor in closing argument that no evidence was presented to corroborate the defendant's testimony of the victim's homosexuality. We affirm.

Defendant was charged by information on April 9, 1984, with felony murder, in that he caused the death of Phillip Heuser while committing an aggravated battery. The evidence was undisputed that Heuser died as a result of stab wounds which defendant inflicted on March 27, 1984, in an altercation which took place in and beside an automobile. Defendant contended that (1) the victim made homosexual advances upon him; (2) as he resisted, a fight ensued; (3) he then drew his knife as a preventive measure; and (4) in moving toward defendant, the victim impaled himself upon the knife.

The statement which defendant sought to suppress was one in which he admitted fighting with the victim and drawing the knife, and he asserted that the victim made a homosexual attack upon him in which the victim's movement toward him caused the stabbing. After being taken into custody on April 6, 1984, defendant was given *Miranda* warnings, whereupon he requested counsel. Later that day, after consulting with his father, defendant consented to discuss the matter with police and made the admissions to the police that were contained in the statement. He maintains that the statement was taken from him without a knowing and voluntary waiver of his rights to remain silent and to have a lawyer present before engaging in discussion with police.

In *Oregon v. Bradshaw* (1983), 462 U.S. 1039, 77 L. Ed. 2d 405, 103 S. Ct. 2830, a majority of the court agreed that two tests must be met before an accused who has expressed a desire to deal with the police only with the assistance of counsel may be subject to further investigation by authorities. The test, as first stated in *Edwards v. Arizona* (1981), 451 U.S. 477, 485, 68 L. Ed. 2d 378, 386, 101 S. Ct. 1880, 1885, is whether "the accused himself initiates further communication, exchanges, or conversations with the police." The *Bradshaw* plurality noted and the dissent agreed that where such a conversation is initiated by the accused, the burden remains on the prosecution to prevail

on the second test which, as also stated in *Edwards*, concerns " '*whether the purported waiver was knowing and intelligent and found to be so under the totality of the circumstances* \*\*\*' [citation] \*\*\* 'including the background, experience, and conduct of the accused.' " (Emphasis added.) 462 U.S. 1039, 1046, 77 L. Ed. 2d 405, 413, 103 S. Ct. 2830, 2835.

At the hearing on the motion to suppress, Detective Billy Meyer of the Quincy police department testified that, after he originally gave defendant the *Miranda* warnings and defendant requested counsel, arrangements were made to transfer defendant from a police interrogation room to a jail. Meyer further testified that defendant's father then arrived at the interrogation room and, while Detective Scott remained at the open door to the room, he talked with defendant. The evidence indicated that after some conversation between father and son, the father asked Scott, "[W]hat happens now?" He testified that Scott responded that further proceedings depended upon what defendant did. According to the evidence, the father then stated defendant wished to speak to the police. Meyer testified that he then readmonished defendant as required by *Miranda* and asked defendant if he was absolutely sure he was changing his request for a lawyer. Defendant replied that he was and subsequently gave the statement in question. Scott's testimony corroborated that of Meyer.

■ The *Edwards* opinion made clear that, in order for law enforcement personnel to take a statement from an accused after he had indicated a desire to obtain counsel before speaking, the accused and *not the police* must reopen the dialogue. (451 U.S. 477, 486 n.9, 68 L. Ed. 2d 378, 387 n.9, 101 S. Ct. 1880, 1885-86 n.9.) The court noted that the rule was designed to protect an accused in custody from being badgered by law enforcement officers. Here, both defendant's father and police Captain Donald Capps, who informed the father of defendant's capture, testified that no request was made to the father to encourage defendant to give a statement. Thus, clearly, the court could properly find that the father was not acting as an agent of the police, and the police did not initiate the subsequent dialogue. That defendant did reopen the dialogue is less clear, but the father testified that the decision for the defendant to talk with the police was a joint decision which the father related to the police. By joining in the decision and permitting the father to so inform the police, the defendant can be held to have initiated the subsequent discussion with the police within the meaning of *Edwards*.

We do not find the situation here to be similar to that referred to in *Rhode Island v. Innis* (1980), 446 U.S. 291, 64 L. Ed. 2d 297, 100 S.

Ct. 1682. There, the court held that statements taken from an accused were admissible in evidence, and the court noted that statements made by an accused are not volunteered if made by the accused as a result of police actions which should have been anticipated to elicit an incriminating response. Here, the only police conduct which brought about the statement was the conduct of permitting the father to see the defendant. Evidence indicated that the father had requested to do so. We do not conceive that the United States Supreme Court intended that the *dictum* of *Innis* would be so encompassing to cover a situation such as this, even if the police might have realized that the defendant was likely to make a statement if he talked to his father.

■ We also conclude that the trial court could properly find under the totality of the circumstances that defendant had made a valid waiver of counsel and the right to remain silent. Initially, we note that defendant was an escapee from a penitentiary in Arizona, which would indicate his familiarity with police procedures. Additionally, although defendant was apparently in an emotional state of mind, the fact that his father was present might tend to negate the intimidating atmosphere. Finally, the officer's second administration of the *Miranda* warnings was fairly extensive, and defendant responded that he knew what he was doing.

The trial court's denial of the motion to suppress was neither contrary to the law nor to the manifest weight of the evidence.

■ Defendant's second contention is that he was denied a fair trial by (1) the exclusion of evidence that would corroborate defendant's testimony that he acted in response to the victim's homosexual advance, and (2) the subsequent conduct of the prosecutor, after the above ruling, in making closing argument that no evidence was presented to corroborate defendant's assertion that the victim was homosexual.

Prior to trial, the trial court granted a State motion to preclude introduction of evidence concerning Heuser's sexual orientation. In an offer of proof, the defense introduced Randy Shelton, who testified he was a member of the local gay community and stated that he had seen the victim in bars known as "gay" bars. Shelton also indicated that he had seen the victim associating with persons of the gay community. The trial court ruled that defendant could not introduce the evidence but stated that if the State in rebuttal were to offer any evidence or in any way attempt to negate the believability of the homosexual contact, the court might reconsider and allow surrebuttal character evidence.

Defendant apparently attempted to analogize (1) evidence of the victim's homosexuality to circumstantial evidence that a victim of a killing was a violent person to corroborate the defendant's evidence of justification by acting in self-defense (*People v. Stombaugh* (1972), 52

Ill. 2d 130, 284 N.E.2d 640); or, (2) evidence the victim was a rapist to similarly support a self-defense theory (*People v. Scott* (1967), 82 Ill. App. 2d 109, 227 N.E.2d 72). However, the courts have not deemed homosexuals to necessarily be violent and have not allowed the admission of defense testimony that the victim was a homosexual absent indication that the victim was a violent one. *People v. Parisie* (1972), 5 Ill. App. 3d 1009, 287 N.E.2d 310; *People v. Herron* (1970), 125 Ill. App. 2d 18, 260 N.E.2d 428.

Even if evidence that the victim was a homosexual had been admissible to bolster the believability of defendant's version of the occurrence, we are not convinced that proof that the victim associated with homosexuals or entered bars frequented by homosexuals would be relevant to prove that point. Undoubtedly, many people who do both are not homosexual. The defense cites *Parisie v. Greer* (7th Cir. 1982), 671 F.2d 1011, *vacated on rehearing* (7th Cir. 1983), 705 F.2d 882, *cert. denied* (1983), 464 U.S. 950, 78 L. Ed. 2d 326, 104 S. Ct. 284, where the court initially held that, in a similar situation, the trial court erred in refusing to admit evidence of (1) homosexual acts by the victim; and (2) the victim's conduct in frequenting known homosexual habitats and making homosexual manifestations there. However, any precedential value of that initial version was nullified by its subsequent rejection by that court on rehearing. Moreover, the evidence in question there was much more probative of the victim's being a homosexual than was the proffered conduct of association with homosexuals here.

■ Because the State had obtained an *in limine* order excluding the introduction of the evidence that the victim associated with homosexuals partially on the ground that evidence of a victim's homosexuality, absent a propensity to violence, was irrelevant, the State's closing argument that defendant offered no evidence to support his contention that the victim was homosexual was improper. However, the defendant made no objection at the time of closing argument when the court could have sustained an objection and informed the jury of the impropriety of the argument and mitigated the prejudice. In any event, the evidence that the defendant, who was larger than the unarmed victim, did not need to use a knife to protect himself from great bodily harm because of attack by the victim was overwhelming. Any error in the argument was harmless regardless of whether it was waived.

We affirm.

Affirmed.

WEBBER and MORTHLAND, JJ., concur.