THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. THOMAS RAVELLETTE, Defendant-Appellant.—THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ANTHONY RAVELLETTE, Defendant-Appellant.—THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DANIEL RAVELLETTE, Defendant-Appellant.

Fourth District   Nos. 4—92—0753 through 4—92—0755 cons.

Argued January 18, 1994.—Opinion filed June 23, 1994.

Daniel D. Yuhas and Jeffrey D. Foust (argued), both of State Appellate Defender's Office, of Springfield, for appellants.

Craig DeArmond, State's Attorney, of Danville (Norbert J. Goetten, Robert J. Biderman, and Beth McGann (argued), all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE KNECHT delivered the opinion of the court:

After a bench trial, defendants were convicted of an armed robbery of a Pizza Hut restaurant in Danville, Illinois. After their arrests, defendants confessed to the crime, but claim their confessions were inadmissible because (1) the police failed to stop the interrogation when defendant Thomas Ravellette exercised his right to counsel and (2) used defendant Daniel Ravellette to encourage defendant Anthony Ravellette to waive his right to counsel, and (3) Anthony's and Daniel's confessions were coerced because of promises of leniency given by the police. Defendants Daniel and Anthony were convicted of armed robbery (Ill. Rev. Stat. 1991, ch. 38, par. 18—2) and sentenced to 17 and 14 years' imprisonment, respectively. Defendant Thomas was found guilty of armed robbery under the theory of accountability and sentenced to 17 years' imprisonment. All three defendants appeal, alleging the court improperly denied motions to suppress their confessions. We affirm in part and reverse and remand in part.

## I. CLAIMS

The facts will be addressed as they relate to the individual defendants' claims.

## A. *Thomas Ravellette's Claim*

Thomas, then 22 years old, was arrested on February 21, 1992, by the Terre Haute, Indiana, police department. Thomas testified he was brought to the police station, brought into an interview room, and read his *Miranda* rights. He was then told his father, Daniel Ravellette, had also been arrested and told the police about the crime. According to Thomas, the Indiana police told Thomas his father had worked out a deal for him and all he had to do was cooperate.

As the police prepared to take a taped statement from Thomas, he requested an attorney. Lieutenant Melton, an officer with the Kokomo, Indiana, police department, then left the interview room. This left Sergeant Kelly, also with the Kokomo police department, alone with Thomas in the room. Kelly then asked Thomas, "Why do you want to do this? You're doing so well?" Thomas responded he wanted a lawyer and he was confused. Sergeant Kelly confirmed such a conversation did take place.

Thomas testified Sergeant Smith, of the Danville, Illinois, police, entered the room after this exchange with Kelly and served him with a warrant for his arrest from Danville. At this point Thomas stated he was confused, he knew he was in a lot of trouble, wanted to get it off of his chest, and decided to tell the police what he knew.

When Smith entered with the Danville warrant, Thomas started thinking of questions he wanted answered. In response to this the police officers repeatedly told him he must initiate the conversation, he must first decide to talk to them without counsel, or they could not discuss the case with him. Thomas decided to talk to the police and gave a taped confession which implicated himself and his codefendants.

Defendant Thomas relies on the statement by Kelly as violating his right to counsel and rendering his later waiver invalid and his later confession inadmissible.

## B. *Anthony Ravellette's Claims*

### (1) Sergeant Smith's Alleged "Reinitiation" of Interrogation Claim

Anthony was 34 years old at the time of his trial and was taken into custody on February 21, 1992, in Terre Haute, Indiana. He was taken into custody at approximately 5 a.m. and was taken to the Vigo County jail. Anthony testified Sergeant Smith, a Danville officer, approached him at the jail around 2 to 3 p.m. and asked if he wanted to talk; Anthony declined and requested an attorney.

Later in the day, Smith returned to the jail and told Anthony they really should talk. Anthony was told Daniel and Thomas had al-

ready confessed and Smith had a "sweet deal" for Anthony. Smith then told Anthony his brother, Daniel, would like to talk to him about the deal. Anthony agreed to talk to Daniel.

At this meeting between Daniel and Anthony, the two allegedly discussed this "deal." According to Anthony, during this discussion Smith was in the room with the two brothers and acknowledged his approval to certain parts of the deal. This deal would allow only two charges to be brought against each defendant, one for the robberies they committed in Illinois and one for the robberies they committed in Indiana. Smith allegedly stated there were certain "strings" he could "pull" and all the police were really interested in was solving the crimes. Anthony testified Smith then listed several jurisdictions which would likely file charges against the defendants if they did not cooperate with the police. At this point Anthony decided to cooperate.

Daniel testified he was told defendants could get a deal where they would only get 10 years' imprisonment for the robberies. To get this deal, however, all defendants must cooperate. He was then told Anthony was not cooperating. Daniel testified he told the officers he should talk to Anthony because he might be able to convince him to cooperate. Daniel was a former police officer and Anthony respected his "grasp of the law." Daniel felt he could explain things to Anthony so he would go along with the deal.

Daniel testified he told Anthony he had a deal worked out and Anthony should go along with it. After this discussion, Anthony decided to give a statement to the police. In his statement, Anthony confessed to committing the armed robbery in Danville, along with several other armed robberies in Illinois and Indiana. This statement also implicated Daniel and Thomas.

Kokomo's Lieutenant Melton testified Daniel may have talked with Anthony to help Thomas, Daniel's son. He also testified Daniel wanted time to talk to Anthony to get Anthony to "do the right thing," i.e., cooperate with the police. Before Melton allowed Daniel to talk to Anthony, Melton made it clear to Daniel the police could not talk to Anthony, because he had requested an attorney.

### (2) Alleged Promises of Leniency Claim

Anthony next claims the reason he confessed to police was because of promises of leniency. These promises were also related to him in his discussion with his brother Daniel. These promises included (1) all of the charges being "rolled into one" charge from each State; (2) if the defendants dealt with the police they could serve their time together; (3) they could serve their sentences in Indi-

ana so they could be close to their families; (4) they could have the sentences on both the charges run concurrently; and (5) certain jurisdictions would not file charges if defendants would cooperate with the investigation. Anthony testified the officers also stated (6) there was no reason they would be sentenced to more than 10 years' incarceration given their cooperation.

Anthony testified when he gave his taped statement he was asked if there were any promises between himself and the police, he initially stated there was an agreement. The police then stopped the tape and rewound it. He was again asked if there were any promises, and he stated there were no promises other than the agreement they had made. Anthony alleges this was at the end of the interview and this portion of the tape was erased.

The transcripts of Anthony's two interviews show he was asked if any promises or pressure or coercion was used to obtain the statement. During both interviews he stated there were no promises, no coercion. The officers who were present during the interviews testified repeatedly there were no promises of leniency given to Anthony or any of the other defendants.

Danville's Sergeant Smith testified he never indicated to Anthony any kind of deal might be worked out between the various agencies which might be involved. Smith stated he took the opposite position: there was nothing he could do about the other jurisdictions. Smith testified he discussed possibilities with Anthony but stated he did not know what was going to happen or which jurisdictions might file charges. He stated there were 14 or 15 jurisdictions which had crimes to solve and all of them could file charges, or none of them could file charges, there was no way to know. Smith testified he never said Anthony's cooperation could lead to certain charges not being filed or a deal on the amount of time they would have to serve. The statement given by Anthony implicated himself, as well as the other defendants.

### C. *Daniel Ravellette's Claim*

Daniel also claims his confession was involuntary due to promises of leniency. When Daniel first talked to the police, he asked them what they had to offer. Daniel was concerned about his son Thomas being sent to prison. Under the first agreement Daniel and the police allegedly came to, if everyone cooperated, Thomas would only be sentenced to six months to a year in prison.

Daniel and the police allegedly worked out a "deal" where (1) the Illinois charges would be "rolled" into the Danville charge, and the Indiana charges would be "rolled" into the Kokomo charge; and (2) defendants would serve any sentence for the robberies in an Indiana

prison so they could be near their families. According to Daniel, during this conversation the officers also stated they did not see why the defendants would be sentenced to more than 10 years' incarceration for the crime. The detectives could offer this "deal" because their jurisdictions had the "strongest" cases, the officers were the heads of an Illinois-Indiana task force formed to solve these crimes, and they were only concerned with clearing these cases. Daniel stated he passed the details of this "deal" on to Anthony when they met, and he convinced Anthony to cooperate so they could take advantage of this deal.

The officers who conducted the interview and took Daniel's statement repeatedly testified there were never any promises of leniency or deals, and they did not have the authority to make any such deals.

## II. STANDARD OF REVIEW

■ In *People v. Melock* (1992), 149 Ill. 2d 423, 448, 599 N.E.2d 941, 951-52, the Supreme Court of Illinois noted the established standard of review of a trial court's determination of whether a confession is voluntary is whether the determination is against the manifest weight of the evidence. The *Melock* court noted when the underlying claim is whether the defendant's confession was involuntary, the courts have declined to engage in a *de novo* review. However, where the testimony is uncontested and the credibility of the witnesses is not questioned, a question of law is presented and a reviewing court may consider the case *de novo*. *People v. Garriott* (1993), 253 Ill. App. 3d 1048, 1050, 625 N.E.2d 780, 783.

## III. EFFECT OF OFFICER'S COMMENT TO DEFENDANT THOMAS AFTER HIS REQUEST FOR COUNSEL

According to Thomas, he did not reinitiate the conversation with the police after he initially invoked his right to counsel. He contends when he requested an attorney, rather than stop all interrogation, Kokomo's Officer Kelly asked him, "Why do you want to do that? You're doing so well?" After this "badgering," he waived his rights. Since the police did not stop his interrogation, and he claims he did not reinitiate the discussion, he argues his later waiver of the right is not valid and his confession was improperly admitted into evidence.

In denying Thomas' motion to suppress, the circuit court found Thomas' confession was not caused by this exchange. The court found the initiating event was Sergeant Smith's service of the Danville, Illinois, arrest warrant.

The State contends the statement by Kokomo's Officer Kelly was

not made with the purpose of eliciting any further conversation. The State also points out defendant simply responded he wanted to talk to counsel; therefore, it is clear Kelly's statement did not elicit the inculpatory statements and was not overwhelming to defendant Thomas, so the confession was properly admitted.

The United States Supreme Court in *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, announced certain procedures police must use when they conduct a custodial interrogation. These required warnings include informing a suspect he has a right to have counsel present during questioning. (*Miranda*, 384 U.S. at 479, 16 L. Ed. 2d at 726, 86 S. Ct. at 1630.) This has been expanded to require the police to stop all interrogation when a defendant requests counsel until such time as counsel is present. In this manner, the Court has fashioned a bright-line rule; once counsel is requested, the police must cease interrogation of the suspect, who may not be approached for further interrogation until counsel is available. *Edwards v. Arizona* (1981), 451 U.S. 477, 68 L. Ed. 2d 378, 101 S. Ct. 1880.

■ In *People v. Winsett* (1992), 153 Ill. 2d 335, 350, 606 N.E.2d 1186, 1194-95, the Supreme Court of Illinois explained the effect of this bright-line rule:

> "Any waiver of the right to counsel given in a discussion initiated by the police is presumed invalid, and statements obtained pursuant to such a waiver are inadmissible in the prosecution's case in chief. The *Edwards* rule is designed to prevent the police from badgering a defendant into waiving his previously asserted *Miranda* rights."

The *Winsett* court also stated once a defendant invokes his right to counsel the prosecution is barred from using any statement later made by the defendant in its case in chief "unless the State can establish (1) the *accused* initiated further discussions with the police; *and* (2) that he knowingly and intelligently waived the right he had invoked." (Emphasis in original.) *Winsett*, 153 Ill. 2d at 350, 606 N.E.2d at 1195.

The crux of this appeal is the effect to be given Officer Kelly's question of defendant Thomas and his later waiver of counsel. The testimony is uncontradicted this exchange took place. Therefore, a review of its effect is a question of law and reviewed *de novo. Garriott*, 253 Ill. App. 3d at 1050, 625 N.E.2d at 783.

■ We hold Kelly's comment was a continuation of interrogation by the police *after* defendant had requested an attorney. An interrogation is defined as any words or actions on the part of the police, other than those normally attendant to arrest and custody,

which police should know are reasonably likely to elicit an incriminating response from the suspect. (*Rhode Island v. Innis* (1980), 446 U.S. 291, 301, 64 L. Ed. 2d 297, 308, 100 S. Ct. 1682, 1689-90.) A police officer should know, by questioning a suspect on *why* he has invoked his right to an attorney during custodial interrogation, he is reasonably likely to elicit an incriminating response from the suspect. Therefore, the statement by Officer Kelly was improper and violated the bright-line rule set forth in *Edwards* and explained in *Winsett*.

Furthermore, under this bright-line rule, the later waiver by Thomas was invalid because the State has been unable to establish the contact was reinitiated by Thomas and not by the police. The circuit court found Thomas' waiver of his right to counsel was caused, not by the improper statement by Officer Kelly, but by the service of the Danville arrest warrant. While Thomas was admonished he, not the police, must reinitiate the interrogation, this did not purge the effect of the improper statement. The admonitions were a part of an uninterrupted chain of events occurring in a very short time period. These events began with the improper statement by Officer Kelly, the service of the Danville warrant immediately after Kelly's statement, and Thomas was then told he must reinitiate the questioning. There was no break in the questioning. The interrogation was never stopped after it was reinitiated by Kelly's statement. For this reason Thomas' waiver was invalid because it was obtained during an interrogation initiated by the police *after* Thomas exercised his right to counsel. We reverse the circuit court's denial of the motion to suppress Thomas' confession.

## IV. EFFECT OF CODEFENDANT DANIEL TALKING TO ANTHONY AFTER ANTHONY INVOKED HIS RIGHT TO COUNSEL

■ Defendant Anthony first argues once he told police he wanted to talk to an attorney, the police were under a duty to scrupulously honor his request and stop all interrogation until counsel was present. (*Edwards*, 451 U.S. at 484-85, 68 L. Ed. 2d at 386, 101 S. Ct. at 1885.) According to Anthony, when Sergeant Smith told him he should talk to his brother Daniel, Daniel and Thomas had already confessed, and Smith had a "sweet deal" for him, this was a reinitiation of interrogation by Smith.

The circuit court found it was not improper for the police to allow the two defendants to talk to each other, even if they expected "something good" to come of it.

While there is dispute as to what was discussed when Anthony and Daniel talked, there is no dispute they did meet, the police knew

Daniel would try to convince Anthony to waive his right to counsel, and Anthony did waive his right after talking with Daniel. The essential facts are uncontradicted and therefore our review is *de novo*. *Garriott*, 253 Ill. App. 3d at 1050, 625 N.E.2d at 783.

Anthony contends once a defendant asserts his right to counsel it is improper to confront him with a codefendant and claim the codefendant has already confessed, citing *Nelson v. Fulcomer* (3d Cir. 1990), 911 F.2d 928. The reasoning in *Nelson* is based on cases where police confront a suspect with his alleged partner in crime and the fact the partner has made a confession implicating him. In the present case, the police did not confront Anthony with Daniel's confession implicating him. According to Daniel's testimony, he did not even give his confession until after he talked to Anthony. Therefore, *Nelson* does not apply, and its reasoning is not persuasive.

Anthony next argues Daniel was acting as a police agent and could not initiate discussion about the case without violating his fifth amendment rights. He maintains under the circumstances, the police should have known Daniel was going to attempt to persuade him to waive his right to have counsel present.

In *People v. Ellis* (1985), 132 Ill. App. 3d 778, 477 N.E.2d 720, this court upheld the denial of a motion to suppress in a case where a father was taken to his son; the son, after talking with his father, waived his right to have counsel present during an interrogation. The *Ellis* court did not believe the United States Supreme Court intended *Innis* to be applied so broadly. There, the father was not requested to try to get a statement from his son, and he, rather than police, initiated subsequent contact.

*People v. Lucas* (1989), 132 Ill. 2d 399, 419, 548 N.E.2d 1003, 1010, stated: "So long as the police have not incited or coached family members to prompt a confession, the fact that the defendant chose to speak to the police after conferring with family members does not make his waiver invalid." These cases are not directly applicable, since here the family member is a codefendant in custody at the same time for this same offense.

The circuit court found it was not improper for the police to allow the defendants to talk even if they knew Daniel was attempting to convince Anthony to waive his right to counsel. We do not agree. Daniel testified he talked to Anthony to try to convince him to cooperate with the police. This is supported by the testimony offered by the State. Kokomo's Lieutenant Melton testified he was told by Daniel he wanted "time to talk to Anthony and try to get Anthony to do the right thing." This meant he wanted to get Anthony to talk to the police. Melton also testified he had made it clear to Daniel the

police could not talk to Anthony because he had requested an attorney. Under these circumstances it is clear the police not only should have known this action could reasonably elicit an incriminating response, they knew it might and in fact counted on this response.

Allowing Daniel to talk to Anthony, after telling Daniel the police could not talk to Anthony until he waived his right to counsel, was clearly an interrogation under the definition set forth in *Innis*. This interrogation violated the "bright-line" rules set forth in *Edwards* and *Winsett*, and the subsequent waiver of the right to counsel is void under the rulings in those cases. Therefore, we reverse the circuit court's denial of Anthony's motion to suppress.

## V. EFFECT OF ALLEGED PROMISES OF LENIENCY

■ Defendants Daniel and Anthony also argue their confessions were involuntary because of promises of leniency. Defendants testified there were certain promises made to them if they would confess, including only one charge in each State, concurrent sentences for those two charges, the codefendants could serve their time together, Thomas would only serve six months to a year, and all their prison time would be done in Indiana. Police officers who interviewed the defendants, by contrast, all testified there were no deals or promises of leniency of any kind. They did not agree to any deals because they did not have the authority to enter into such agreements.

Since this determination requires a determination of the witnesses' credibility, our review is limited to determining if the finding is against the manifest weight of the evidence. (*Melock*, 149 Ill. 2d at 448, 599 N.E.2d at 951-52.) In this case the circuit court explicitly found the officers' testimony was more credible than defendants'. The record supports the court's ruling, which therefore is affirmed.

## VI. *BRUTON* DOES NOT BAR ADMISSIBILITY OF DANIEL'S CONFESSION

■ Defendants also argue if one of the confessions should have been suppressed, it should not have been used against other defendants, so their convictions must be reversed. This argument is based on *Bruton v. United States* (1968), 391 U.S. 123, 20 L. Ed. 2d 476, 88 S. Ct. 1620, in which the Court found it was a violation of a defendant's confrontation clause right to allow a codefendant's confession to be admitted at a joint trial where the codefendant does not testify. This is true even if the jury is instructed the confession is only to be used against the defendant who gave it.

The present case, however, is not one to which this rule applies. *Bruton* was concerned with the effectiveness of limiting instructions and the prevention of spillover prejudice to a defendant when his codefendant's confession is admitted against the codefendant at a joint jury trial. This was a bench trial, and unlike *Lee v. Illinois* (1986), 476 U.S. 530, 90 L. Ed. 2d 514, 106 S. Ct. 2056, the trial court did not specifically rely upon the statements made by the other codefendants in finding each defendant guilty. For this reason, *Bruton* does not require the reversal of Daniel's conviction.

## VII. CONCLUSION

We affirm the judgment as to Daniel (No. 4—92—0755). We reverse the convictions of Thomas (No. 4—92—0753) and Anthony (No. 4—92—0754) and remand for a new trial.

No. 4—92—0753, Reversed and remanded for a new trial.
No. 4—92—0754, Reversed and remanded for a new trial.
No. 4—92—0755, Affirmed.

McCULLOUGH, P.J., and LUND, J., concur.