NOTICE
Decision filed 08/01/17. The text
of this decision may be changed
or corrected prior to the filing of
a Petition for Rehearing or the
disposition of the same.

2017 IL App (5th) 130220

NO. 5-13-0220

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Saline County. |
| | ) | |
| v. | ) | No. 11-CF-176 |
| | ) | |
| JAMES R. BRANCH, | ) | Honorable |
| | ) | Todd D. Lambert, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE CATES delivered the judgment of the court, with opinion.
Justices Goldenhersh and Overstreet[*] concurred in the judgment and opinion.

**OPINION**

¶ 1     Defendant, James R. Branch, was convicted after a jury trial of three counts of predatory criminal sexual assault of a child and was sentenced by the circuit court of Saline County to 15 years' imprisonment on each count, to be served consecutively. Defendant argues on appeal that the State failed to prove him guilty of one count of predatory criminal sexual assault in that there was no evidence of digital penetration. He also asserts he was denied a fair trial because of prosecutorial misconduct and ineffective assistance of counsel.

_____

[*]Justice Schwarm was originally assigned to participate in this case. Justice Overstreet was substituted on the panel subsequent to Justice Schwarm's retirement and has read the briefs and listened to the recording of oral argument.

He further contends he is entitled to a *Krankel* hearing because he alleged in his prepared statement in allocution that he was denied effective assistance of trial counsel, but the court made no inquiry into the allegations. See *People v. Krankel*, 102 Ill. 2d 181, 464 N.E.2d 1045 (1984). As a supplemental argument, defendant argues the court erred in failing to suppress a statement he allegedly made to a detective upon being advised he was under arrest. We affirm in part and remand in part.

¶ 2     Between the dates of May 1, 2010, and May 4, 2011, L.M.D., the victim, was allegedly subjected to various sexual acts in a trailer, where defendant resided. At the time of the alleged incidents, L.M.D. was seven or eight years old. Defendant was ultimately charged with one count of performing an act of cunnilingus upon the victim, one count of placing his finger in her vagina, and one count of having the victim perform an act of fellatio on him.

¶ 3     On May 4, 2011, L.M.D. was removed from her parents' home because of the parents' drug usage and because they were allowing a family member who was a registered sex offender to live in their home. DCFS placed L.M.D. in the home of a woman named Cheryl, who had previously lived with L.M.D.'s father for 18 years but had never married him. Cheryl and L.M.D.'s father had a son, the victim's stepbrother, who was then 27 years old. Because of Cheryl's long-term relationship with the family, she had known L.M.D. since she was a baby. At the time L.M.D. was placed with Cheryl, she was married to another individual and had two daughters close in age to L.M.D.

¶ 4     A couple of weeks after L.M.D. was placed with Cheryl, L.M.D. was taking a bath with one of Cheryl's daughters. L.M.D. told Cheryl's daughter that defendant made L.M.D.

play with him and had rubbed his thing against her. Cheryl overheard the conversation and stopped it. She then called L.M.D.'s caseworker. Cheryl reported that subsequent to Cheryl reporting the statements made by L.M.D., Cheryl also noticed that L.M.D. started acting out sexually with pillows and blankets. Prior to L.M.D. being placed in Cheryl's home, she also testified that she had seen L.M.D. and defendant around town together. Cheryl further related that defendant, on several occasions, had previously brought L.M.D. to Cheryl's house to play with her daughters. At no time did L.M.D. ever mention any abuse, and she always seemed fine around defendant. Cheryl stated that defendant did for L.M.D. what her parents would not, and she agreed that the living conditions in L.M.D.'s home were "pretty terrible."

¶ 5       After conducting several interviews with L.M.D., Department of Children and Family Services (DCFS) investigators believed L.M.D.'s statements were credible and consistent with the information obtained from Cheryl. L.M.D. testified that defendant often bought her toys, clothes, shoes, and food. He would come to her house, and they would ride bicycles to the park, the pool, fast food restaurants, and Walmart. L.M.D. further testified that defendant also took her to his trailer, where they would watch "dirty stuff" on television. She also related various sex acts he performed on her, or had her do to him, while they were at his trailer. She claimed that she told him to stop, but he would not do so, and that no one else touched her this way. There was no physical evidence corroborating L.M.D.'s allegations of sexual abuse.

¶ 6       Defendant denied the allegations against him but admitted he had taken L.M.D. to various places around town. He confirmed that he bought things for her because he felt sorry for her and because he was trying to take care of her. He related that he had known L.M.D.

since she was two years old and felt somewhat responsible for her. According to defendant, L.M.D.'s parents did not spend any money on her and often came to him for food or money. The parents lived in a trailer near him, and they were the only people he socialized with other than his own family. He also admitted to having had a sexual relationship with both parents.

¶ 7    The detective and investigator who interviewed defendant claimed he admitted to having L.M.D. alone at his trailer. Defendant countered he never made such a statement to them or to anyone and testified he never took L.M.D. alone to his trailer, in spite of what others said. Defendant further claimed L.M.D. could not have watched pornographic movies at his trailer because he had not had any electricity there since 2007. He did see L.M.D. watching pornographic movies at her own home, however, while her parents were present. He had also seen the sex offender who was living with them go into L.M.D.'s bedroom and close the door when she was inside the room. L.M.D., however, told investigators that when the offender moved in, she had to give up her bedroom to him and his girlfriend. L.M.D. was then forced to stay in the living room. Defendant also claimed that he had called DCFS about the condition in L.M.D.'s home sometime in 2009, but nothing came of it. The investigator for DCFS had no record of any such contact from defendant. Defendant continued to assert he had never sexually assaulted L.M.D., nor had he done anything inappropriate with any child.

¶ 8    The jury chose to believe L.M.D. and returned guilty verdicts on all three counts. Defendant subsequently was sentenced to consecutive 15-year terms of imprisonment. Defendant appeals his conviction claiming several instances of prosecutorial misconduct and ineffective assistance of counsel, which denied him a fair trial. He also contends one count of

4

predatory criminal sexual assault should be reduced to aggravated criminal sexual abuse because the evidence failed to prove he digitally penetrated the victim's vagina. Defendant further finds fault with the court's denial of his motion to suppress, as well as with the court's failure to conduct a *Krankel* hearing.

¶ 9                                          ANALYSIS

¶ 10    As previously stated, defendant was charged with three counts of predatory criminal sexual assault of a child. One of those counts alleged that defendant knowingly committed an act of sexual penetration with a victim who was under 13 years of age, in that he placed his finger in the victim's vagina. See 720 ILCS 5/12-14.1(a)(1) (West 2010). Defendant first argues on appeal that his conviction for predatory criminal sexual assault must be reduced to aggravated criminal sexual abuse because the evidence failed to prove that defendant digitally penetrated L.M.D.'s vagina, as alleged.

¶ 11    We initially note that the standard for reviewing the sufficiency of the evidence in a criminal case is whether any rational trier of fact, after viewing the evidence in the light most favorable to the prosecution, could have found the essential elements of the crime beyond a reasonable doubt. *People v. Wheeler*, 226 Ill. 2d 92, 114, 871 N.E.2d 728, 740 (2007). We, as a reviewing court, will not set aside a criminal conviction on the grounds of insufficient evidence unless the proof is so improbable or unsatisfactory that there exists reasonable doubt of the defendant's guilt. *People v. Maggette*, 195 Ill. 2d 336, 353, 747 N.E.2d 339, 349 (2001). We further note that it is the function of the jury to assess the credibility of witnesses, weigh the evidence presented, and resolve conflicts in, and draw reasonable

5

inferences from, the evidence. *People v. Moss*, 205 Ill. 2d 139, 164, 792 N.E.2d 1217, 1232 (2001).

¶ 12    A defendant is guilty of predatory criminal sexual assault of a child if the defendant was 17 years of age or over and commits an act of sexual penetration with a victim who was under 13 years of age when the act was committed. 720 ILCS 5/12-14.1(a)(1) (West 2010). Sexual penetration means any intrusion, however slight, of any part of the body of one person into the sex organ of another person. 720 ILCS 5/12-12(f) (West 2010). Whether sexual penetration occurred is a question of fact to be determined by the trier of fact. *People v. Hillier*, 392 Ill. App. 3d 66, 69, 910 N.E.2d 181, 184 (2009). The trier of fact is entitled to draw all reasonable inferences from both circumstantial and direct evidence, including an inference of penetration. Such an inference of penetration is unreasonable only if the victim denies that penetration occurred. *Hillier*, 392 Ill. App. 3d at 69, 910 N.E.2d at 184. Here, L.M.D. testified that defendant's hand was rubbing her vagina at a time when her pants and underwear were off. She further stated that defendant rubbed her front private part hard with his hand and it hurt. L.M.D. never denied that digital penetration occurred at any point in the proceedings, and in fact, told a forensic interviewer that defendant touched her with his hands "*in* her you know what" (emphasis added), referring to her vaginal area. Testimony from L.M.D. that defendant rubbed her vagina in the manner stated is sufficient to create a reasonable inference of penetration, however slight. See *Hillier*, 392 Ill. App. 3d at 69, 910 N.E.2d at 184-85. Taking the evidence in the light most favorable to the prosecution, there was sufficient evidence presented for the jury to reasonably infer that defendant placed part

of his hand or finger in L.M.D.'s vagina, thereby satisfying the elements for one count of predatory criminal sexual assault of a child.

¶ 13    Defendant next argues on appeal that he was denied a fair trial because of prosecutorial misconduct and ineffective assistance of counsel. Specifically, defendant contends the prosecutor misled the jury, raised unsupported insinuations about defendant, and improperly bolstered the complaining witness's credibility, while defense counsel repeatedly failed to object and failed to file a posttrial motion to preserve the issues for appeal. Defendant points out that the jury's assessment of the evidence came down to an assessment of the credibility of the witnesses, given that there was no physical evidence presented that a sexual assault had occurred. Consequently, defendant concludes that he was prejudiced as a result of improper arguments, comments, and questions designed to bolster the State's case, all of which denigrated his defense. For the reasons that follow, we conclude, based upon the limited review available under the circumstances, that there was no prosecutorial misconduct and that defendant was not deprived of a fair trial.

¶ 14    Defendant initially contends that the detective and investigator who conducted defendant's interview at the police station both testified that defendant admitted, during questioning, to taking L.M.D. to his trailer alone. Defendant claimed he never made such an admission. The recording of defendant's interview reveals, in fact, that defendant only admitted to taking L.M.D. to the park and to his niece's house so she could play. Defendant did not mention his trailer. The recording of the interview, however, was not admitted at trial, and defense counsel did not object to the trial testimony of the investigator or the detective. No reason for the failure to introduce the recording is evident from the record. The

7

recording was admitted at the suppression hearing, which occurred some seven months earlier than the trial. Nothing in the record suggests that the prosecutor specifically knew that the investigator and the detective's trial testimony was inconsistent with the statements made by the defendant heard on the recording until defendant denied making such a statement at trial. Moreover, the prosecutor did not mention or highlight the testimony pertaining to defendant taking L.M.D. to his trailer during closing argument. The prosecutor instead argued only that defendant admitted to taking L.M.D. out of the family home. *Cf. People v. Whitlow*, 89 Ill. 2d 322, 339-40, 433 N.E.2d 629, 637 (1982) (reversible error for prosecutor to argue in closing an inference totally unsupported by the evidence). The defendant carries the burden of proof for a claim of prosecutorial misconduct. *People v. Hanson*, 273 Ill. App. 3d 332, 338, 652 N.E.2d 824, 829 (1995). We therefore find no evidence of prosecutorial misconduct with respect to the references to L.M.D. being at defendant's trailer. Similarly, defendant claims that the prosecutor's cross-examination of one of his witnesses, Correira, improperly suggested that defendant took L.M.D. to his trailer alone with him when the prosecutor knew that defendant had disclaimed this fact. Again, the prosecutor's questioning was not improper where the only evidence presented at that point in the proceedings suggested that fact to be true. Under the circumstances presented, we do not find prosecutorial misconduct in this instance.

¶ 15    Defendant also finds fault with the prosecutor's cross-examination of Correira. Correira, age 34, had been called by the defense to testify that she had known defendant since she was 16 years old. She stated that defendant and L.M.D. would come to her house, and L.M.D. would play with Correira's daughters. Correira said defendant took L.M.D. out a

8

lot because L.M.D. had nothing to do at her own house. During cross-examination, the prosecutor asked the witness if she was aware of defendant's past, and she answered affirmatively. The prosecutor attempted to get more specific about defendant's past, but this line of questioning was interrupted by the court, and the jury was temporarily excused. Outside the jury's presence, defense counsel argued that the prosecutor was attempting to inquire about defendant's criminal record, which had already been ruled inadmissible in an earlier motion *in limine*. The prosecutor argued that defendant had opened the door, by asking the witness about defendant's character. The court rejected the State's argument and agreed with defendant. The prosecution was barred from asking any further questions about defendant's past. Defendant believes the court should also have informed the jury to disregard the testimony of the witness regarding her knowledge of defendant's past. Defendant argues the prosecutor's questions led the jury to believe his past had involved other acts of sexual abuse. The prosecutor explained she was only attempting to elicit testimony pertaining to defendant's prior burglary conviction based on the witness's comments regarding defendant's character. There was no indication that she was attempting specifically to suggest defendant had committed other prior acts of sexual abuse. While we believe the prosecutor's questions crossed the line, especially given the earlier motion *in limine*, a prosecutor's remarks amount to reversible error only when they result in substantial prejudice to a defendant such that it is impossible to say whether or not a verdict of guilt resulted from those comments. *People v. Nieves*, 193 Ill. 2d 513, 533, 739 N.E.2d 1277, 1286 (2000). Because the exchange was brief, and dealt with immediately by the court,

9

we cannot say the prosecutor's actions in this instance rose to that level of substantial prejudice.

¶ 16    Defendant next takes issue with the State's closing argument. Specifically, defendant points to the prosecutor's statements pertaining to how odd it was for a single adult male to repeatedly take a child out of her home and spend money on her when he, himself, could not pay his bills. We agree with the State that prosecutors are afforded wide latitude in closing argument and may argue facts and reasonable inferences drawn from the evidence. *People v. Williams*, 192 Ill. 2d 548, 573, 736 N.E.2d 1001, 1015 (2000). The prosecutor's comments clearly inferred that defendant's behavior and interactions with the victim were abnormal. Given the record as a whole, however, and the wide latitude generally afforded prosecutors in closing argument, we cannot say that this argument was unreasonable.

¶ 17    Defendant also finds fault with the prosecutor cross-examining him regarding an alleged phone call he made to DCFS in 2009. Defendant testified that L.M.D. was neglected, watched pornographic movies in her home, and lived in a filthy house without enough food. The prosecutor asked defendant why he did not call DCFS regarding the terrible conditions in which L.M.D. was living. Defendant responded that he did call DCFS once, in 2009. The prosecutor then asked defendant what he would say if he were told that DCFS had records of phone calls received by the agency and that there was no record of defendant having made such a call. Defendant responded he would want to see the records from 2009. The prosecutor then asked defendant why he did not report the terrible living conditions to the police. Defendant responded he was giving the parents "a chance to straighten their act out." It is reasonable to assume the prosecutor was attempting to impeach defendant that he was

not the person who first called DCFS regarding the sexual abuse. When it was clear that defendant was referring to a separate call made some two years earlier than the actual call made to DCFS which prompted L.M.D.'s removal from the home, the prosecutor moved on from that line of questioning. More importantly, even assuming the cross-examination was improper, whether defendant did, or did not, call DCFS in 2009 was a minor detail. Any assumed error was harmless beyond a reasonable doubt.

¶ 18    Defendant also argues his credibility was improperly attacked during the detective's testimony. The detective testified that "everybody lies to the police," thereby implying that defendant, too, was a liar. The context in which defendant's claim arose occurred during the prosecutor's questioning of the detective. The prosecutor was eliciting testimony from the detective to demonstrate to the jury that police, too, often lie to a suspect during questioning and that this was a common police tactic. According to the detective, they use such tactics to elicit truthful responses from people they interview. In this instance, the detective lied to defendant during police questioning when he told him that the police had discovered semen in the victim's vagina. When the prosecutor asked the detective why lying to a suspect is a useful interrogation technique, the detective's answer was unresponsive when he stated that "everybody lies" to the police. When considered in the context in which the testimony was given, the detective's statement was not an attack on defendant's credibility. Rather, it was nothing more than the detective's explanation of what the police perceive as an effective interrogation technique.

¶ 19    Defendant also finds fault with the prosecutor's closing argument, claiming it improperly appealed to the jury's emotions by stating that L.M.D. would be affected for the

11

rest of her life. Again, prosecutors are afforded wide latitude in closing arguments. Assuming, however, the closing argument was improper, such prosecutorial remarks can be cured by instructing the jury to disregard arguments not based on the evidence. Here, the court specifically instructed the jury to disregard any statement or argument made by the attorneys which were not based on the evidence. See *People v. Rushing*, 192 Ill. App. 3d 444, 454, 548 N.E.2d 788, 794 (1989). Having considered the record as a whole, we do not find that defendant's claims rise to the level of prosecutorial misconduct in this instance. In light of the foregoing, we conclude defendant was not deprived of a fair trial.

¶ 20    In a supplemental brief on appeal, defendant argues the court erred in failing to suppress his statement made to the detective and investigator upon being advised he was under arrest. Defendant contends his statement was made after he had invoked his right to counsel and, therefore, was inadmissible. The State counters that defendant's statement was made spontaneously, after questioning had ended, and when the defendant was told he was under arrest. Therefore, the spontaneous statement was admissible into evidence. The State further contends that on two separate occasions, even after invoking his postarrest rights, defendant reinitiated conversations with the detective, thereby knowingly and intelligently waiving his prior invocations.

¶ 21    Defendant filed a motion on December 30, 2011, seeking to suppress any statements made to the detective after having been given *Miranda* warnings and having invoked his right to counsel. *Miranda v. Arizona*, 384 U.S. 436 (1966). A hearing on the motion was held on January 20, 2012. The evidence revealed that at the outset of any questioning, defendant was advised of his *Miranda* rights. Defendant indicated he understood those rights and

signed a waiver, wherein he agreed to speak with the detective. At one point during the questioning, defendant stated he needed to talk to an attorney before he answered any more questions but then asked questions of his own and continued to answer the detective's questions. This same scenario occurred a second time. After the detective finished questioning defendant, the detective left the room for 20 to 30 minutes. According to the detective, upon returning to the room, he told defendant he was under arrest, and defendant stated, "I guess they found my DNA on that girl." The detective denied asking any questions before defendant made this statement.

¶ 22    After watching the videotape of defendant's interrogation and hearing the evidence and counsels' arguments, the court ruled that defendant waived his rights after invoking them as he kept re-engaging the detective during questioning. Additionally, at the time he was arrested, the formal interrogation of defendant had already ended. The court therefore concluded that defendant's spontaneous statement, made at the time of his arrest, should not be suppressed.

¶ 23    In reviewing a trial court's ruling on a motion to suppress evidence, the court's findings of fact are to be given great deference. Accordingly, we will not reverse such findings on appeal unless they are against the manifest weight of the evidence. *People v. Ravellette*, 263 Ill. App. 3d 906, 911, 636 N.E.2d 105, 109 (1994). As to the trial court's ultimate legal ruling as to whether suppression is warranted, however, *de novo* review applies. *People v. Flores*, 315 Ill. App. 3d 387, 392, 734 N.E.2d 63, 67 (2000). When an accused invokes his right to have counsel present during custodial interrogation, he may not be subject to further questioning without the presence of counsel unless the accused himself

13

initiates further communication, exchanges, or conversations with the police. *Edwards v. Arizona*, 451 U.S. 477, 485 (1981). "If the police subsequently initiate a conversation with the accused in the absence of counsel, the accused's statements are presumed involuntary and are not admissible as substantive evidence at trial." *People v. Woolley*, 178 Ill. 2d 175, 198, 687 N.E.2d 979, 990 (1997). If, on the other hand, the accused, rather than the police, initiated further discussion after invoking the right to counsel then the statements may be admissible as substantive evidence at trial. *Woolley*, 178 Ill. 2d at 198-99, 687 N.E.2d at 990. Here, defendant reopened and initiated further conversation with the police immediately after invoking the right to counsel, thereby knowingly waiving his right to the presence of counsel during questioning. Additionally, after the interview concluded, the detective left the room for some 20 to 30 minutes. When he came back into the room and told defendant he was going to be arrested, defendant stated "I guess they found my DNA on that girl." The detective did not question defendant in any form to elicit defendant's response. Defendant's statement clearly was unsolicited and spontaneous. Any statement given freely and voluntarily without any compelling influences is admissible. *Miranda*, 384 U.S. at 478. Given that defendant's statements were unprompted, the court's denial of defendant's motion to suppress was not in error.

¶ 24    Finally, defendant argues he made numerous allegations of ineffective assistance of trial counsel in his written statement in allocution, which was presented at the sentencing hearing. Defendant claims counsel failed to file a motion to dismiss for lack of evidence and failed to present relevant and material evidence, both at a pretrial hearing and at trial. He further alleged that counsel failed to call 4 of the 10 witnesses he requested to have called

14

and did not present 6 exhibits he said he would present. Defendant also contends he was prejudiced by counsel's closing argument as well as by the failure to poll the jury after reaching a verdict. Defense counsel filed no written posttrial motion to preserve defendant's issues for appeal. Defendant believes the court should have conducted at least a preliminary inquiry into his claims of ineffectiveness of counsel and then should have appointed new counsel to investigate the claims or informed defendant that the claims lacked merit before proceeding to sentencing. Here, the court made no inquiry, offered no comment on defendant's claims, and instead moved immediately to sentencing as though no allegations had been made. Because the court erred in failing to make any inquiry into the allegations, defendant asserts remand is mandated pursuant to *People v. Krankel*, 102 Ill. 2d 181, 464 N.E.2d 1045 (1984), and *People v. Moore*, 207 Ill. 2d 68, 797 N.E.2d 631 (2003). We agree.

¶ 25    The record reveals that at the sentencing hearing held on February 1, 2013, the trial court allowed defendant to make a statement in allocution. The transcript of the statement reads that defendant's statement of allocution was unintelligible and was unable to be transcribed. The record then reveals that the court thanked defendant for his statement, and sentence was imposed. On August 29, 2014, defendant filed a letter, addressed to the State Appellate Defender, alleging numerous allegations of ineffective assistance of counsel. Defendant claims this written statement was allegedly his statement in allocution, which he read at sentencing, even though not filed until more than a year later. While we question some aspects of the written statement, we agree with defendant that the court erred in not inquiring further as to defendant's allegations of ineffective assistance of counsel at the time of sentencing. In *People v. Moore*, 207 Ill. 2d 68, 797 N.E.2d 631 (2003), our supreme court

reviewed the issue of when a trial court must make a preliminary inquiry into a defendant's *pro se* claim of ineffective assistance of counsel. Interpreting *People v. Krankel*, 102 Ill. 2d 181, 464 N.E.2d 1045 (1984), the court stated:

> "when a defendant presents a *pro se* posttrial claim of ineffective assistance of counsel, the trial court should first examine the factual basis of the defendant's claim. If the trial court determines that the claim lacks merit or pertains only to matters of trial strategy, then the court need not appoint new counsel and may deny the *pro se* motion. However, if the allegations show possible neglect of the case, new counsel should be appointed." *Moore*, 207 Ill. 2d at 77-78, 797 N.E.2d at 637.

¶ 26    The operative concern for this court is whether the trial court conducted an adequate inquiry into defendant's allegations of ineffective assistance of counsel. Here, defendant alleges he told the trial court of his concerns regarding his claims of ineffective assistance of counsel. This court, however, does not have those statements. For reasons not apparent, the court reporter was unable to transcribe defendant's statements to the court. Assuming, *arguendo*, that these statements were made, the issue then is whether defendant's allegations of ineffective assistance of counsel, without any real factual support, were sufficient to trigger an inquiry under *Krankel*. The issue of whether the circuit court was obligated to conduct a preliminary *Krankel* inquiry is a question of law we review *de novo*.

¶ 27    This court has not previously had the opportunity to review the narrow issue presented. Our dilemma, however, is not unlike the one presented in *Moore*, where the trial court had failed to make a record regarding defendant's claims of ineffective assistance of counsel. Therefore, consistent with our supreme court's findings in *Moore*, we conclude that

16

the trial court erred in failing to conduct the necessary preliminary examination as to the factual basis of defendant's allegations against his trial counsel. As stated in *Moore*, "a *pro se* defendant is not required to do any more than bring his or her claim to the trial court's attention, which the defendant did in this case." *Moore*, 207 Ill. 2d at 79, 797 N.E.2d at 638. Once defendant had done so, it was incumbent upon the trial court to conduct a *Krankel* inquiry, and thus create a record for review of defendant's claims. The purpose of such an inquiry is to facilitate the trial court's full consideration of defendant's *pro se* claims of ineffective assistance of counsel and potentially limit issues on appeal. *People v. Jolly*, 2014 IL 117142, ¶ 29, 25 N.E.3d 1127. In this case, had the court conducted such an inquiry, this court would have had a sufficient record upon which to determine whether defendant has made a sufficient showing of ineffective assistance of counsel.

¶ 28    Our remand, however, is limited simply to an inquiry, not for a full evidentiary hearing and appointment of new counsel. It is the trial court that must determine whether defendant is entitled to appointment of new counsel to pursue his claims. During this preliminary examination, "some interchange between the trial court and trial counsel regarding the facts and circumstances surrounding the allegedly ineffective representation is permissible and usually necessary in assessing what further action, if any, is warranted on a defendant's claim." *Moore*, 207 Ill. 2d at 78, 797 N.E.2d at 638. In addition to its exchange of information with trial counsel, the trial court may also seek information from defendant, himself. And the trial court is permitted to base its determination on its own observations of defense counsel's performance at trial. If, at the conclusion of its inquiry, the trial court determines that the claim of ineffectiveness lacks merit or pertains only to matters of trial

17

strategy then the court need not appoint new counsel and may deny the *pro se* motion. Alternatively, if the court finds defendant's claims have some merit, then new counsel should be appointed to represent defendant on his ineffectiveness claims before the court.

¶ 29    For the foregoing reasons, we affirm the judgment of the circuit court of Saline County but remand for a *Krankel* inquiry on the issue of ineffective assistance of counsel consistent with this disposition.


¶ 30    Affirmed in part; remanded in part.

2017 IL App (5th) 130220

NO. 5-13-0220

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
|---|---|---|
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Saline County. |
| | ) | |
| v. | ) | No. 11-CF-176 |
| | ) | |
| JAMES R. BRANCH, | ) | Honorable |
| | ) | Todd D. Lambert, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

**Opinion Filed:**      **August 1, 2017**

_____

**Justices:**      Honorable Judy L. Cates, J.

Honorable Richard P. Goldenhersh, J., and
Honorable David K. Overstreet, J.,
Concur

_____

**Attorneys**
**for**
**Appellant**
     Michael J. Pelletier, State Appellate Defender, Thomas A. Lilien, Deputy
Defender, Kim M. DeWitt, Assistant Appellate Defender, Josette Skelnik,
Supervisor, Office of the State Appellate Defender, Second Judicial
District, One Douglas Avenue, Second Floor, Elgin, IL 60120

_____

**Attorneys**
**for**
**Appellee**
     Michael Henshaw, Saline County State's Attorney, Saline County
Courthouse, Harrisburg, IL 62946; Patrick Delfino, Director, David J.
Robinson, Deputy Director, Luke McNeill, Staff Attorney, State's
Attorneys Appellate Prosecutor, 725 South Second Street, Springfield, IL
62704

_____